LOUIS H. GURLEY, Plaintiff-Appellee, *v.* STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, Defendant-Appellant.

Fifth District    No. 80-559

Opinion filed October 21, 1981.

Stephen W. Thomson, of Reed, Armstrong, Gorman & Coffey, of Edwardsville, for appellant.

Richard A. Cagle, of Alton, for appellee.

Mr. JUSTICE JONES delivered the opinion of the court:

Defendant, State Farm Mutual Automobile Insurance Co. (State Farm), appeals from a declaratory judgment entered by the circuit court of Madison County. In entering the judgment that court ruled that at the time plaintiff, Louis Gurley, was struck by a motorist, an insurance policy issued by defendant, containing an uninsured motorist clause, was in full force and effect. On appeal defendant contends (1) plaintiff's policy had lapsed by its express terms because of failure to pay the premium within prescribed time limits and (2) there was insufficient evidence to establish that the motorist striking defendant was "uninsured."

It is undisputed that on April 7, 1969, defendant issued automobile liability insurance policy number 663 162—DO7—13 (the policy) to plaintiff. The policy term was from April 7, 1969, through October 7, 1969, and for those succeeding six-month periods for which the required renewal premium was paid. In addition to providing uninsured motorist protection of $10,000, the policy contained clauses which in pertinent parts provided:

> "*Cancellation* * * * The company agrees as to each coverage in force on such effective date:
>
> A. to continue such coverage in force until the expiration of the current policy, and
>
> B. to renew the policy for the succeeding policy period * * *.
>
> These agreements shall be void and of no effect * * * if the named insured fails to discharge when due any of his obligations in connection with the payment of premium * * *.
>
> *Changes*—The terms of this policy may not be waived or changed

except by policy endorsement attached hereto, signed by an executive officer of the company."

It is also undisputed that plaintiff did not pay the October 7, 1974, renewal premium by that date. Thereafter defendant sent, and plaintiff received, a notice which stated that his policy had expired on October 7, 1974, at 12:01 a.m. The notice further provided that "payment within 10 days after expiration date reinstates this policy as of the expiration date for six months, if paid thereafter, you will be advised if payment has been accepted for reinstatement." Despite receiving that notice plaintiff did not make the premium payment until plaintiff's wife delivered the payment to defendant's agent on October 19, 1974, which was 12 days after its due date. This payment was made one day after plaintiff, as a pedestrian, sustained injuries when struck by a car driven by Deborah S. Francis. In return for the premium payment plaintiff's wife was given what plaintiff characterizes as an "Unconditional Receipt." That receipt, signed by defendant's agent, stated:

"Receipt is hereby acknowledged by:
State Farm Auto
Seventy-five-------------93/100 Dollars ($75.93)
From Louis H. Gurley
Pol. No. 6663 162 DO7-13."

At the time of the injury plaintiff had also been issued from defendant policy number 6670 644 F23 13B (the other policy) for another automobile which plaintiff owned, and that policy was in force. This other policy also contained $10,000 of uninsured motorist protection. Arbitration proceedings as provided for in the other policy were held and resulted in an award to plaintiff of the full amount of the uninsured motorist coverage provided by the other policy. Defendant paid that award to plaintiff, with plaintiff expressly reserving his rights to claim coverage under the policy now under consideration. Following payment of the first award, plaintiff instituted the declaratory action now before this court.

In his complaint plaintiff alleged that despite the late premium payment the policy remained in full force because defendant had induced plaintiff to make a late payment by establishing a course of conduct of allowing late payments or, in the alternative, defendant waived the requirement that a timely payment be made. In its answer defendant denied all material allegations of the complaint, and the cause proceeded to a bench trial.

Plaintiff's wife testified that at 6 p.m. on Friday, October 18, 1974, she telephoned the office of defendant's agent, Tom Cox. Mrs. Gurley stated that she had asked if she could come right over and pay the premium. In response she was told everyone would be gone from the

office but that it would be all right to come in and pay it the next morning. The plaintiff, Mr. Gurley, was struck and injured two hours later. Mrs. Gurley further testified that the next morning she took the expiration notice with her to Cox' office and after making a cash payment she received the previously described receipt. Mrs. Gurley stated that she was worried about her husband and related his injury to Cox as he wrote out the receipt. However, she admitted that nothing was said about a potential claim, nor were any assurances given that coverage was in effect at the time of the injury. Mrs. Gurley also testified that while her husband was still in the hospital a check for $5.25 was received from defendant. She stated that although the only notation on the check itself was "includes dividend" she concluded it was for overpayment of premium. Mrs. Gurley could not remember the accompanying notice which stated:

> "Unless continuous coverage is indicated, this policy was not in force between 12:01 a.m. on the termination date and the time the policy was reinstated on the reimbursement date as provided under established company procedures. You were not billed for this period."

Defendant's agent, Tom Cox, also testified at trial that he did not remember meeting with Mrs. Gurley when she paid the premium on Saturday, October 19, 1974. Cox stated that although the signature on the receipt was his, the other writing appeared to be that of his wife. He therefore assumed that he had presigned the receipt and his wife had filled it in, as was often done when he was out of the office. Cox first learned about the accident after reading about it in the newspaper.

Mrs. Cox also testified, stating that she did not remember issuing the receipt or meeting with Mrs. Gurley, although she did believe the handwriting on the receipt to be hers.

Plaintiff also testified at the trial. He stated that he was in the practice of making premium payments a few days past their due date, but always before the 10-day retroactive reinstatement period had lapsed. On this occasion he had received two premium notices. The first notice, received prior to October 7, 1974, indicated that date as the due date. A second notice was received a few days after the due date. Plaintiff admitted that he was aware that he had only 10 days to avail himself of automatic retroactive reinstatement. He stated that he failed to do so within that time because "I got hurt. And I did not think they would use that against me. I had no reason for me to want to drop that policy or anything." Over objection plaintiff also stated that even though he did not make payment within the 10 days, he instituted this action because "it was through my attorney which brought it up that I found out there was coverage on that." Plaintiff further testified that he did not remember endorsing any refund check and that he was never advised by defendant that retroactive rein-

statement would not be afforded until after defendant had cashed his premium check.

On the basis of this evidence the trial court entered judgment in favor of plaintiff, ruling that the policy was in full force and effect at the time of the accident. Ten days later defendant filed a motion to reconsider, alleging that plaintiff had not met his burden because he had failed to present any evidence at trial to prove that the motorist was uninsured. Shortly thereafter, plaintiff filed a petition to reopen the case for further evidence in order to establish that the motorist was in fact uninsured. The petition to reopen was allowed over objection, and a hearing was held. Plaintiff testified over objection that Deborah Francis had told him she was uninsured and that no one from defendant had disputed this fact during arbitration of the other policy, which contained an identical provision for uninsured motorist coverage. Also over objection, plaintiff's attorney testified that an investigation made on his behalf failed to reveal any insurance coverage on either the automobile or the driver and that in her deposition the driver denied the existence of any insurance.

Following the reopened hearing, plaintiff again made a motion to reopen the case in order to present certain documents establishing that the motorist, Deborah Francis, and her vehicle were uninsured. The motion was denied, and after plaintiff made an offer of proof, the trial court entered judgment in favor of plaintiff, holding that there was no reason to alter its previous determination. Defendant appeals.

■■ In asserting his position that defendant's course of conduct either induced late payment or waived the requirement of timely payment, plaintiff relies primarily upon the doctrine of estoppel. Estoppel occurs when the party claiming benefit of the doctrine has relied upon actions or representations of the other party which are inconsistent with the position taken by the other party at trial. (*Levin v. Civil Service Com.* (1972), 52 Ill. 2d 516, 288 N.E.2d 97; *Monarch Gas Co. v. Illinois Commerce Com.* (1977), 51 Ill. App. 3d 892, 366 N.E.2d 945; *Reynolds v. Guarantee Reserve Life Insurance Co.* (1976), 44 Ill. App. 3d 764, 358 N.E.2d 940.) In this record we find nothing which would constitute any type of misrepresentation or misleading act by the defendant or its agents. The premium notice unequivocally stated that plaintiff would automatically receive retroactive coverage only if payment was made within the 10-day grace period. Both plaintiff and his wife testified that they were fully aware that the premium payment must be made within 10 days for automatic continuous coverage. Yet plaintiff failed to make payment within 10 days. According to plaintiff's wife, plaintiff's payment was not on time because his own paycheck had been late. Unfortunate as that situation was, the late payment was in no way induced by any action or forbearance on defendant's part. In addition, the evidence was undisputed that even

though plaintiff was habitually late with his premium payments, he had always made his payments on prior occasions within the 10-day grace period, and Cox had repeatedly reminded plaintiff of the 10-day maximum late payment allowance. Therefore, no previous actions by defendant or its agent either waived the 10-day grace period or estopped it from asserting nonpayment within that period as a defense.

■■ Even though no prior action by defendant constituted waiver, or could amount to estoppel, plaintiff asserts that defendant's action in unconditionally accepting his premium check amounted to a waiver of the 10-day limitation period. We cannot agree with this contention for several reasons. First, the policy terms could only be changed by a written endorsement signed by an officer of the defendant company. No contention is made that such was done here. Second, the receipt signed by defendant's agent merely acknowledged that defendant had received $75.93 from plaintiff which was to be applied to the policy. The receipt in no way indicated the time period for which the payment was being received, nor did it imply that defendant waived its option to reinstate the policy prospectively rather than retroactively.

■■ Although it has often been stated that forfeiture of an insurance contract for nonpayment of premium is not favored in the law (see *Van Hulle v. State Farm Mutual Automobile Insurance Co.* (1969), 44 Ill. 2d 227, 254 N.E.2d 457), it is not the province of the court to misconstrue unequivocal language merely so that an insurance carrier will bear the loss. Furthermore, the case at bar is readily distinguishable from cases cited by plaintiff in which insurance coverage has been decreed despite a late payment. In *Cullotta v. Kemper Corp.* (1979), 78 Ill. 2d 25, 397 N.E.2d 1372, it was held that once a check is accepted within the specified time limits, a fact not occurring here, its later dishonor by the bank does not result in a cancellation of the insurance contract unless it is shown that the original acceptance of the check was conditioned upon the bank's honoring the check.

Plaintiff also cites *Van Hulle*, but the facts there are far different from those presented in this case. In *Van Hulle* the insured tendered a premium check on the date of an accident which occurred 62 days after the due date of the premium. There, the insured expressly told the agent that if the insurer would not afford coverage for the accident he wanted the check returned since he no longer needed coverage on the demolished automobile. After holding the check for three weeks the insurer cashed it. The insurer had retroactively reinstated lapsed policies on prior occasions. In addition, the agent knew before the check was cashed that its tender was conditioned upon retroactive reinstatement, and the company accepted this condition by cashing the check with that knowledge. Neither of those facts are present in this case, and for that reason *Van Hulle* is not controlling.

Instead, we find the nearly factually identical case of *Shiaras v. Chupp* (1975), 61 Ill. 2d 164, 334 N.E.2d 129, to be controlling here. In *Shiaras* approximately one month ahead of the due date State Farm mailed to its insured a notice reminding him that his auto renewal premium was due on June 8, 1971. When payment was not received by that date State Farm mailed a second notice on June 11, 1971, which stated:

> "To have continuous protection make payment to the Company or a State Farm agent within 10 days after policy due date. If payment is not made within 10 days after due date, but is made in less than 40 days, protection will be reinstated as of date payment is received by the Company, subject to established Company procedures."

Plaintiff failed to make payment until June 21, 1971, on which date his policy was prospectively reinstated. The court held that under those facts defendant was not covered for an intervening accident occurring on June 18, 1971.

Plaintiff seeks to distinguish the *Shiaras* case on two grounds. First, he states that the insured there was not given a receipt for his premium payment, whereas plaintiff here received the previously described receipt, which plaintiff characterized as "unconditional." However, we find that the receipt given here did no more than acknowledge that a cash payment was received and was to be applied to the policy. Nothing in that receipt indicated that the payment was not to be applied to the policy under the terms which defendant had communicated to plaintiff by means of its notice. To hold that such a receipt changes previously stated terms would require every cash receipt to restate explicitly the major terms of the insurance contract or, at the very least, to state that the receipt does not change them. Such a holding would exalt form over substance and would be an improper basis for distinguishing *Shiaras*.

Defendant also seeks to distinguish *Shiaras* on the basis that the notice there stated that the company after 10 days would reinstate prospectively, whereas here it said that after 10 days the company reserved the right to notify plaintiff as to whether retroactive reinstatement would be afforded. The mere fact that defendant may not have notified plaintiff would only indicate that retroactive reinstatement was not to be afforded and does not serve as a basis for distinguishing the cases.

Finding that the policy here had lapsed, as did the policy in *Shiaras*, we reverse the judgment of the circuit court.

Reversed.

KASSERMAN, P. J., and KARNS, J., concur.